GAY CROSTHWAIT GRUNFELD – 121944
JENNY S. YELIN – 273601
ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California 94105-2235
Telephone: (415) 433-6830
Facsimile: (415) 433-7104
Email: ggrunfeld@rbgg.com
           jyelin@rbgg.com

JENNIFER LIU – 279370
THE LIU LAW FIRM, P.C.
1170 Market Street, Suite 700
San Francisco, California 94102-4991
Telephone: (415) 896-4260
Facsimile: (415) 231-0011
Email: jliu@liulawpc.com

Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JAIMIE QUINBY, LINDA GOMES, and ERIC FONTES, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC.,<br><br>    Defendant. | Case No. CV-15-4099 WHO<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. William H. Orrick<br>Date: January 18, 2017<br>Time: 2:00 p.m.<br>Crtrm.: 2, 17th Floor<br><br>Trial Date: None Set |

[3073318-4]

# TABLE OF CONTENTS

Page

NOTICE OF MOTION.................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES.............................................................. 4

INTRODUCTION ........................................................................................................................ 4

FACTUAL AND PROCEDURAL BACKGROUND ................................................................. 4

SETTLEMENT TERMS, NOTICE, AND RESPONSE.............................................................. 5

ARGUMENT................................................................................................................................ 7

I. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE UNDER GOVERNING CASE LAW, MERITING FINAL APPROVAL................ 7

II. THE SETTLEMENT RESULTED FROM ARM'S-LENGTH NEGOTIATIONS................................................................................................... 9

III. ALL RELEVANT *HANLON* FACTORS WEIGH HEAVILY IN FAVOR OF FINAL APPROVAL OF THE SETTLEMENT .................................................. 9

    A. Plaintiffs' Case, While Strong, Faced Challenges in Certifying the Class and In Proving that General Managers Were Improperly Classified as Exempt (*Hanlon Factor* 1)............................................ 9

    B. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Strongly Favor Settlement Now (*Hanlon Factor* 2)...................... 11

    C. Plaintiffs Faced Risks of Certifying a Class And Maintaining Class Action Status Through Trial (*Hanlon Factor* 3). .......................................... 12

    D. The Exceptional Monetary Amount Achieved in the Settlement Strongly Favors Approval (*Hanlon Factor* 4)................................................ 13

    E. The Settlement Was Negotiated After Significant Discovery (*Hanlon Factor* 5)..................................................................................... 13

    F. Class Counsel Has Extensive Experience and Supports the Settlement (*Hanlon Factor* 6)....................................................................................... 14

    G. The Presence of a Governmental Participant (*Hanlon Factor* 7).................. 14

    H. Class Members Overwhelmingly Support the Settlement (*Hanlon Factor* 8)............................................................................................... 14

CONCLUSION........................................................................................................................... 15

[3073318-4]

i  CV-15-4099 WHO

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

Page

**CASES**

*Arenas v. El Torito Rests., Inc.*,
    183 Cal. App. 4th 723 (2010) .................................................................................... 10

*Bayat v. Bank of the W.*,
    No. 13 Civ. 2376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ....................... 11, 12

*Bell v. Citizens Fin. Grp. Inc.*,
    No. 10 Civ. 320, Docket No. 259 (W.D. Pa. Apr. 21, 2013) ............................. 10, 12

*Cruz v. Dollar Tree Stores, Inc.*,
    No. 07-2050 SC, 2009 WL 1458032 (N.D. Cal. May 26, 2009), *modified in
    part*, 270 F.R.D. 499 (N.D. Cal. 2010) ....................................................................... 10

*Dailey v. Sears, Roebuck & Co.*,
    214 Cal. App. 4th 974 (2013) .................................................................................... 10

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ......................... 8

*Friend v. Hertz Corp.*,
    No. 7 Civ. 5222, 2011 WL 750741 (N.D. Cal. Feb. 24, 2011), *aff'd*, 564 F.
    App'x 309 (9th Cir. 2014) .................................................................................. 11, 12

*Greko v. Diesel U.S.A., Inc.*,
    277 F.R.D. 419 (2011) ............................................................................................... 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................................... 7, 8, 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...................................................................................... 8

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .............................................................................. 10, 13

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .................................................................................... 7

*Keller v. Tuesday Morning, Inc.*,
    179 Cal. App. 4th 1389 (2009) .................................................................................. 10

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ...................................................................................... 7

*Larsen v. Trader Joe's Co.*,
    No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) .................. 8

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) .................................................................................. 13

*Martinez v. Joe's Crab Shack Holdings*,
    231 Cal. App. 4th 362 (2014) ................................................................................... 10

*Mora v. Big Lots Stores, Inc.*,
    194 Cal. App. 4th 496 (2011) ................................................................................... 10

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................... 11, 14, 15

*Nobles v. MBNA Corp.*,
    No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ......................... 9

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................. 7, 8, 9

*Smith v. Am. Greetings Corp.*,
    No. 14 Civ. 2577, 2016 WL 2909429 (N.D. Cal. May 19, 2016) ............................ 14

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................................ 8

*Weeks v. Kellogg Co.*,
    No. CV 09-08102 MMM RZX, 2013 WL 6531177 (C.D. Cal. Nov. 23,
    2013) ......................................................................................................................... 15

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
    No. C 05-2320 SBA, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) ....................... 10

**RULES**

Federal Rules of Civil Procedure 23(c) ................................................................................ 12

Federal Rules of Civil Procedure 60(b) ................................................................................. 6

[3073318-4]

iii                                                    CV-15-4099 WHO
NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 18, 2017 at 2:00 p.m., or as soon thereafter as the matter may be heard, Plaintiffs Jaimie Quinby, Linda Gomes, and Eric Fontes, on behalf of themselves and all persons similarly situated (collectively, "Plaintiffs"), will and hereby do move this Court for an order granting Plaintiffs' Motion for Final Approval of Class Action Settlement (the "Final Approval Motion"). The Joint Stipulation of Settlement and Release ("Settlement Agreement") will fully resolve this wage and hour class action by establishing a fund of $3,650,000 to pay the 263 individuals eligible to be class members, current and former General Managers of Defendant ULTA Salon, Cosmetics & Fragrance, Inc. ("ULTA" or "Defendant")'s California stores, for their claims that ULTA violated California law by misclassifying them as exempt from overtime compensation.

The Final Approval Motion seeks entry of the Proposed Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement, filed herewith, which:

- Finds that notice to the Class has been completed in conformance with the Court's September 22, 2016 Order Provisionally Certifying Settlement Class and Preliminarily Approving Class Settlement, Dkt. No. 46 ("Preliminary Approval Order"), and was the best notice practicable under the circumstances;
- Holds that the Class Notice was adequate and satisfied due process requirements;
- Certifies the Class for the purposes of settlement;
- Finds that the Settlement was entered into in good faith pursuant to non-collusive, arm's-length negotiations, and that the Settlement is fair, reasonable, and adequate;
- Grants final approval of the Settlement pursuant to Federal Rule of Civil Procedure 23(e), and holds the Settlement binding on all Class Members who

1 have not timely opted out;

2 • Directs the Parties to effectuate the terms of the Settlement Agreement as set
3 forth in the Settlement Agreement, Exhibit A to the Declaration of Gay
4 Crosthwait Grunfeld in Support of Plaintiffs' Motion for Final Approval of
5 Class Action Settlement ("Grunfeld Decl."), filed herewith;

6 • Directs ULTA to deposit the Gross Settlement Amount, $3,650,000 within
7 14 days of the date the Court enters the Final Approval Order, into an
8 interest-bearing escrow account established by the Settlement Administrator,
9 Simpluris;

10 • Orders that the Effective Date of the Settlement shall be the last of either:
11 (a) the day after the deadline for taking an appeal of the Court's Order
12 Granting Final Approval of the Settlement ("Final Approval Order"), if no
13 appeal is filed; or (b) the day after all appeals are resolved in favor of final
14 approval, if there is an appeal of the Final Approval Order;

15 • Directs Simpluris to distribute the Gross Settlement Amount, plus any
16 interest earned, within three (3) days after the Effective Date, as follows:

17   • $10,000 to each of the Class Representatives;
18   • $923,884.67 to Class Counsel as attorney's fees and costs;
19   • $75,000 to the California Labor and Workforce Development Agency
20     ("LWDA");
21   • the remainder, minus a $130,000 reserve fund ("Reserve Fund") to
22     cover errors and omissions and $8,500 for itself as settlement
23     administration fees, to Class Members pursuant to the formula set
24     forth in Section 3.4 of the Settlement Agreement;

25 • Directs Simpluris to use the Reserve Fund to cover correctable errors or
26 omissions and then redistribute the remainder 180 days after the date of the
27 Final Approval Order, as set forth in Section 3.1(D) of the Settlement
28 Agreement;

[3073318-4]

2                                                                    CV-15-4099 WHO
NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  • Orders that any unclaimed settlement funds after each distribution shall be
2  redistributed as specified in Section 3.1(D)-(E) of the Settlement Agreement;
3  if the amount after each redistribution is equal to or greater than $5,000, the
4  remaining funds will be redistributed to Class Members who have timely
5  cashed their Settlement Checks, with the cost of the redistribution to be paid
6  from the Fund; and if the amount remaining is less than $5,000, the
7  remaining funds will be donated to the Justice & Diversity Center of the Bar
8  Association of San Francisco under the *cy pres* doctrine;

9  • Orders the Parties to abide by all terms of the Settlement Agreement, as
10  modified by the Court's orders; and

11  • Enters judgment in this case in accordance with the Settlement Agreement.

12  As explained more fully in the accompanying Memorandum of Points and
13 Authorities, the proposed settlement meets the standard for final approval and is in the best
14 interests of the Class Members.  Plaintiffs' Motion is based on this Notice of Motion; the
15 accompanying Memorandum of Points and Authorities; the Grunfeld Declaration; the
16 Declarations of Jennifer Liu, Jaimie Quinby, Linda Gomes, Eric Fontes, and Jeremiah
17 Kincannon, filed herewith; the entire record in this case; any other papers filed in support
18 of the Motion; as well as any argument of counsel at the hearing.
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The excellent settlement achieved in this class action on behalf of current and former General Managers ("GMs") of ULTA stores in California merits final approval. The settlement creates a fund of $3,650,000, over $2.5 million of which will be distributed to the 263 Class Members in the case. In the period since the Court issued its Preliminary Approval Order, the Settlement Administrator has provided adequate notice of the settlement to Class Members, and the opt out and objection period has elapsed. No Class Members filed objections and no Class Members timely opted out of the settlement. The one hundred percent participation rate reflects the extraordinary nature of the results achieved—the average net settlement award to Class Members is estimated to be nearly $10,000. As discussed below, all of the factors courts consider when determining whether to approve a class action settlement weigh in favor of approval, because the settlement is fundamentally fair, reasonable, and adequate.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, three former General Managers of ULTA stores in California, sued Defendant on September 9, 2015, alleging that ULTA misclassified its California General Managers as exempt from overtime compensation under California law. *See* Class Action Complaint, Dkt. No. 1. After months of litigation and discovery, the Parties reached a settlement, under which ULTA agreed to pay the plaintiff class $3,650,000 for the alleged violations. *See* Grunfeld Decl., Exhibit A.

On September 22, 2016, this Court granted preliminary approval of the Settlement Agreement reached by plaintiffs Jaimie Quinby, Linda Gomes, and Eric Fontes, and defendant ULTA, and granted provisional certification of a settlement class of current and former ULTA General Managers ("GMs") in California. *See* Preliminary Approval Order, Dkt. No. 46; *see also* Notice of Mot. & Mot. for Order Provisionally Certifying Settlement Class and Preliminarily Approving Class Settlement; Mem. of Points & Authorities in Support Thereof ("Preliminary Approval Motion"), Dkt. No. 38, at 1-4 (describing full

factual and procedural background of case).  Pursuant to the Court's Order, on October 17, 2016, Simpluris, the appointed Settlement Administrator, mailed notice of the settlement to the 263 Class Members on the list provided by ULTA.  Declaration of Jeremiah Kincannon Regarding Notice and Settlement Administration ("Kincannon Decl."), filed herewith, ¶ 5. The period during which Class Members could opt out or object to the settlement closed on December 6, 2016.  *See id.*, Exhibit A (Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing) ¶¶ 14, 19.  No Class Members have timely opted out of the settlement, and no objections have been filed.  Kincannon Decl. ¶¶ 7-8.[1]

## SETTLEMENT TERMS, NOTICE, AND RESPONSE

The settlement requires ULTA to pay a total of $3,650,000 to the class.  Settlement Agreement, §§ 1.15, 3.1(A).  As discussed in their Motion for Class Representative Service Awards and Attorney's Fees and Costs, filed November 15, 2016 (Dkt. No. 47), Plaintiffs seek $10,000 for each of the three class representatives, $912,500 in attorney's fees, which constitutes 25% of the common fund, and $11,384.67 in costs.  *Id.*, § 3.2(A), 3.3.  Additionally, the settlement provides for $75,000 to be paid to the LWDA under the California Private Attorneys General Act ("PAGA"), California Labor Code §§ 2698 *et seq.*, and for payment to Settlement Administrator Simpluris, which has agreed to accept no more than $8,500.  *Id.*, § 3.1(A); Declaration of Jennifer L. Liu in Support of Plaintiffs' Motion for Order Provisionally Certifying Settlement Class and Preliminarily Approving Class Settlement, Dkt. No. 40 ¶ 26.  The remaining funds—expected to total

---

[1] One Class Member, Justin Daley, contacted Class Counsel informing Class Counsel that he wished to opt out of the settlement on December 7, 2016, which was one day after the opt-out deadline.  Declaration of Jennifer Liu in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Liu Decl."), filed herewith. ¶ 5.  On December 28, 2016, Mr. Daley's counsel informed Class Counsel that Mr. Daley had decided not to opt out of the settlement.  *Id.*  On January 2, 2017, Mr. Daley's counsel confirmed in writing that Mr. Daley was withdrawing his request for exclusion.  *Id.*

1  approximately $2,612,615—will be distributed among all Class Members.[2]  Settlement

2  Agreement, § 1.18.  Class Members' estimated shares have been calculated using a

3  formula that takes into account the Class Member's salary during his/her time as a GM for

4  ULTA in California and the total number of workweeks the Class Member worked in the

5  GM role.  *Id.* at § 3.4(B).  Every Class Member is guaranteed a minimum settlement award

6  of $750, regardless of the salary and workweek factors, designed to encourage

7  participation in the settlement.  *Id.* at § 3.4(B)(1).

8       Simpluris has provided proper and adequate notice of the settlement to the class, as

9  directed by the Preliminary Approval Order.  Kincannon Decl. ¶¶ 5-6; Preliminary

10 Approval Order, Dkt. No. 46, ¶ 16.  After mailing notice of the settlement on October 17,

11 2016, some Class Member notice packets were returned by the post office.  Kincannon

12 Decl. ¶ 6.  Simpluris performed a skip trace for any Class Members without forwarding

13 addresses, and then re-mailed notice packets to fifty-nine (59) addresses found through the

14 skip trace or other means.  *Id*.  Ultimately, twenty-five (25) notices were undeliverable

15 because Simpluris was unable to find a better address.  *Id.*

16       The response by Class Members to the settlement has been universally positive.

17 During the forty-five day opt-out and objection period, there were no objections filed by

18 Class Members, and no Class Members timely opted out of the settlement.  Kincannon

19 Decl. ¶¶ 7-8.  This is an extraordinary participation rate, especially considering that many

20 Class Members are current employees of ULTA and may be afraid of retaliatory action by

21 their employer.

22       The average net settlement share is estimated to be $9,425.86.  Motion for Class

23 ─────────────────────

24 [2] The Settlement Agreement provides for a reserve fund of $130,000 to be set aside to
    cover correctable errors and omissions and cover any claim for relief allowed pursuant to
25 Fed. R. Civ. P. 60(b)(1) or 60(d).  Settlement Agreement, § 3.1(D).  Any amount
   remaining 180 days after the Final Approval Order and after covering any correctable
26 errors or omissions will be redistributed among the Class Members who have timely
   cashed their checks, or if the amount remaining is small enough that redistribution is not
27 sensible in the discretion of Class Counsel, the unclaimed amount will be donated to the
   Settlement Agreement's *cy pres* beneficiary.  *Id.*

28

Representative Service Awards and Attorney's Fees and Costs, Dkt. No. 47 at 15.  The highest net settlement share is estimated to be approximately $35,000, and ninety-three of the 263 total Class Members are expected to receive net settlement payments of more than $10,000.  *Id.*  Twenty-six Class Members (those with shares in the highest ten percent) are estimated to receive more than $21,000.  Motion for Class Representative Service Awards and Attorney's Fees and Costs, Dkt. No. 47 at 10; *see also* Kincannon Decl. ¶ 10.

## ARGUMENT

### I. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE UNDER GOVERNING CASE LAW, MERITING FINAL APPROVAL

The Ninth Circuit has repeatedly recognized that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in the context of "complex class action litigation."  *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citation omitted) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").

"Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).  A district court considers several factors in determining whether a class action settlement is "fair, adequate, and reasonable."  *Hanlon*, 150 F.3d at 1026 (citation omitted).  Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the

[3073318-4]

7   CV-15-4099 WHO
NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

class members to the proposed settlement. *Id.*[3] "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Different factors may carry more weight in "different factual contexts," and in some cases one factor may be determinative. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citation omitted).

When class counsel is experienced and supports the settlement, and the agreement was reached after arm's-length negotiations, courts should give the settlement a presumption of fairness. *See Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *5, *8 (N.D. Cal. July 11, 2014), appeal dismissed (Nov. 17, 2014); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

In this case, the settlement should receive final approval because it was achieved after arm's-length negotiations, and all the pertinent *Hanlon* factors demonstrate its fairness.

---

[3] In addition, "where, as here, a settlement is negotiated *prior* to formal class certification, consideration of the[] eight [] factors alone is not enough to survive appellate review." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (emphasis in original). In these cases, courts must also look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include: (1) where "counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution;" (2) where the "parties negotiate a 'clear sailing' agreement providing for the payment of attorneys' fees separate and apart from class funds," and (3) where "the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund." *Id.* (internal quotation marks omitted). None of these signs are present here, where Plaintiffs' Counsel has sought only the 25% benchmark proportion of the Settlement fund as attorney's fees, there is no "clear sailing" agreement, and the settlement is non-reversionary.

[3073318-4]

8   CV-15-4099 WHO
NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## II. THE SETTLEMENT RESULTED FROM ARM'S-LENGTH NEGOTIATIONS

The Parties reached the settlement in this case after conducting targeted, pre-mediation discovery, exchanging detailed and lengthy mediation statements, and conducting a day-long mediation with Mark Rudy in June 2016.  Grunfeld Decl. ¶ 5; Liu Decl. ¶¶ 3-4.  Although the Parties reached a general agreement on the day of the mediation, they continued to negotiate the precise terms of the settlement agreement for nearly two months before the final version was executed.  Grunfeld Decl. ¶ 5; Liu Decl. ¶ 4.  Given the vigorous discovery and negotiations required to achieve the settlement agreement, it is clear that the settlement is not the result of collusion between the Parties, and is therefore presumptively fair.  *See Officers for Justice*, 688 F.2d at 625, 627.

## III. ALL RELEVANT *HANLON* FACTORS WEIGH HEAVILY IN FAVOR OF FINAL APPROVAL OF THE SETTLEMENT

All *Hanlon* factors that are relevant to this case strongly support a finding that the settlement is fair, reasonable and adequate.  Plaintiffs' case, while strong, had several significant procedural and substantive hurdles that made the outcome at trial and on appeal uncertain.  Further litigation would have been risky, costly, and would have likely taken years to conclude.  Rule 23 certification was not at all certain, and there was a risk that Plaintiffs would not have succeeded on the merits even if they obtained class certification.  Plaintiffs' counsel believes that the settlement amount is an excellent result for the class.  Significant written discovery was exchanged, and Plaintiffs' conducted a Rule 30(b)(6) Deposition of ULTA.  Finally, there were no objections to the settlement submitted by Class Members during the objection period.

### A. Plaintiffs' Case, While Strong, Faced Challenges in Certifying the Class and In Proving that General Managers Were Improperly Classified as Exempt (*Hanlon Factor* 1).

"The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair."  *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (citing *In re Mego Fin.*

[3073318-4]

9

CV-15-4099 WHO

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  *Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).  Although Plaintiffs' Counsel believe
2  Plaintiffs have a strong case, they recognize the risks involved in continuing litigation,
3  including the risks of class certification being denied and losing on the merits of their
4  claims.  While some plaintiffs in similar cases involving store managers or assistant
5  managers have obtained class certification, *see, e.g.*, *Martinez v. Joe's Crab Shack*
6  *Holdings*, 231 Cal. App. 4th 362 (2014) (reversing order denying class certification);
7  *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419 (2011) (granting class certification); *Cruz v.*
8  *Dollar Tree Stores, Inc.*, No. 07-2050 SC, 2009 WL 1458032 (N.D. Cal. May 26, 2009),
9  *modified in part*, 270 F.R.D. 499 (N.D. Cal. 2010) (granting class certification); *Whiteway*
10 *v. FedEx Kinko's Office & Print Servs., Inc.*, No. C 05-2320 SBA, 2006 WL 2642528
11 (N.D. Cal. Sept. 14, 2006) (granting class certification), several courts have denied class
12 certification in executive exemption misclassification cases similar to this case, *see, e.g.*,
13 *Dailey v. Sears, Roebuck & Co.*, 214 Cal. App. 4th 974 (2013) (affirming trial court's
14 denial of class certification); *Mora v. Big Lots Stores, Inc.*, 194 Cal. App. 4th 496 (2011)
15 (affirming trial court's denial of class certification); *Arenas v. El Torito Rests., Inc.*, 183
16 Cal. App. 4th 723 (2010) (affirming trial court's denial of class certification); *Keller v.*
17 *Tuesday Morning, Inc.*, 179 Cal. App. 4th 1389 (2009) (affirming trial court's order
18 granting decertification).
19      Even if Plaintiffs were to obtain class certification, Plaintiffs could still lose on the
20 merits of their claims, which would result in no recovery for them or Class Members.  As
21 discussed in Plaintiffs' Motion for Preliminary Approval and Motion for Class
22 Representative Service Awards and Attorney's Fees and Costs, a former GM had
23 previously brought overtime claims against Defendant in an individual arbitration alleging
24 that the GM had been misclassified, and Defendant prevailed.  Grunfeld Decl. ¶ 7; Liu
25 Decl. ¶ 6.  In another case involving assistant managers of a bank who alleged that they
26 were misclassified, the jury returned a defense verdict.  *Bell v. Citizens Fin. Grp. Inc.*, No.
27 10 Civ. 320, Docket No. 259 (W.D. Pa. Apr. 21, 2013), Liu Decl. ¶ 7, Exhibit A.  While
28 Plaintiffs believe they would have ultimately prevailed on the merits of their claims at trial,

1  they also recognize that they faced a significant risk of losing.

2  Here, the risks to Plaintiffs of losing on class certification or on the merits weigh
3  heavily in favor of final approval.  *See Bayat v. Bank of the W.*, No. 13 Civ. 2376, 2015
4  WL 1744342, at *3 (N.D. Cal. Apr. 15, 2015) ("[A] settlement is in the interests of class
5  members who otherwise may not be entitled to any relief should their claims fail on the
6  merits.").

**B.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation Strongly Favor Settlement Now (*Hanlon Factor* 2).**

9  When analyzing the fairness of a settlement, "[t]he Court shall consider the vagaries
10 of litigation and compare the significance of immediate recovery by way of the
11 compromise to the mere possibility of relief in the future, after protracted and expensive
12 litigation." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.
13 Cal. 2004) (citation omitted).  Here, this factor weighs heavily in favor of approving the
14 settlement.

15 The proposed settlement confers a substantial benefit on Class Members, while
16 further litigation would create significant risks and cause additional expense and delay.
17 Plaintiffs' overtime claims in this case turn on whether Plaintiffs and Class Members were
18 improperly classified as exempt executives under California law, a question that is fact-
19 intensive. *Friend v. Hertz Corp.*, No. 7 Civ. 5222, 2011 WL 750741, at *5 (N.D. Cal. Feb.
20 24, 2011) (whether the "executive exemption" is appropriate requires a "fact-intensive
21 inquiry" (internal quotation marks omitted)), *aff'd*, 564 F. App'x 309 (9th Cir. 2014).

22 If the Parties continued to litigate the case, they would need to conduct extensive
23 discovery of electronically-stored information and take numerous depositions of
24 Defendant's corporate representatives, Class Members, and other witnesses.  Liu Decl. ¶ 8;
25 Grunfeld Decl. ¶ 8.  Plaintiffs would also seek the preservation and production of video
26 surveillance footage, which would be extremely costly.  Liu Decl. ¶ 8.  Both Parties would
27 likely retain experts to opine on liability and/or damages issues.  *Id.*  The Parties would
28 also no doubt litigate class certification and most likely summary judgment motions as

1  well.  *Id.*; Grunfeld Decl. ¶ 8.  If Plaintiffs survived summary judgment, a fact-intensive
2  trial would still be necessary to determine Plaintiffs' and Class Members' exemption
3  status.  Liu Decl. ¶ 8.  A trial would be lengthy and complex and would consume
4  tremendous time and resources for all Parties and the Court.  *Id.*  Any judgment would
5  likely be appealed, further extending the litigation.  *Id.*; Grunfeld Decl. ¶ 8.  As merely one
6  example of the risk, expense, complexity, and delay that would be involved in further
7  litigation, the *Bell v. Citizens Fin. Grp.* case took three years of litigation and a three-week
8  jury trial, only to have the jury return a defense verdict.  Liu Decl. ¶ 7, Exhibit A.  By
9  contrast, Class Members here will likely receive payment in late February or early March
10 2017, just a month or two from now.

       Given the risk, expense, complexity, and delay that further litigation of this action would entail, final approval is especially appropriate.  *See Bayat*, 2015 WL 1744342, at *4 ("Absent settlement, the costs and complexity of this case will certainly increase as motions to dismiss, summary judgment motions, and class certification motions (along with associated discovery) will need to be litigated.").

### C. Plaintiffs Faced Risks of Certifying a Class And Maintaining Class Action Status Through Trial (*Hanlon Factor* 3).

       Plaintiffs faced the possibility that the Court would not have granted Rule 23 certification of their claims.  As explained in Section III(A) above, even if Plaintiffs had obtained class certification, there was still a risk that the class would have lost certification at a later stage in the case, since Rule 23(c)(1)(C) allows class certification orders to "be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  The fact that Plaintiffs had not yet obtained class certification at the time of the settlement weighs heavily in favor of approval.  Where there is "uncertainty as to whether [a] case could be maintained as a class action throughout trial, [this] factor favors settlement."  *See Bayat*, 2015 WL 1744342, at *4.

[3073318-4]

12   CV-15-4099 WHO
NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

### D. The Exceptional Monetary Amount Achieved in the Settlement Strongly Favors Approval (*Hanlon Factor* 4).

The $3,650,000 non-reversionary gross settlement amount is fair, reasonable, and adequate. As discussed in detail in Plaintiffs' Preliminary Approval Motion, the monetary amount obtained in this case represents approximately 26.7% of the Class's total theoretical maximum recovery, based on Class Counsel's best assumptions of possible damages, and compares very favorably to settlements in other similar cases. Preliminary Approval Motion, Dkt. No. 38 at 16.

Moreover, the individual settlement shares are very significant: the average net payout is estimated to be $9,425.86 and the highest payout is estimated to be $35,006.98. Kincannon Decl. ¶ 10. Thirty-five percent of class members are expected to recover more than $10,000. *See* Declaration of Gay Crosthwait Grunfeld in Support of Motion for Class Representative Service Awards and Attorney's Fees and Costs ("Grunfeld Decl. for Awards, Fees & Costs"), Dkt. No. 47-1, ¶ 18 and Exhibit G.

### E. The Settlement Was Negotiated After Significant Discovery (*Hanlon Factor* 5).

"[I]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.'" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Here, Plaintiffs obtained significant written discovery. Plaintiffs propounded two sets of document requests, to which Defendants responded, producing over 2,600 pages of documents. Liu Decl. ¶ 3. Class Counsel prepared for and flew to Chicago, Illinois, to take a Rule 30(b)(6) deposition of one of Defendants' corporate representatives. *Id.* Class Counsel also analyzed class-wide damages using data produced in advance of the mediation. *Id.*; Grunfeld Decl. ¶ 5. Plaintiffs also interviewed approximately thirty current and former GMs, and obtained declarations from sixteen of them. Grunfeld Decl. ¶ 5; Liu Decl. ¶ 3. These sources provided sufficient information to make an informed

decision to settle. *See Smith v. Am. Greetings Corp.*, No. 14 Civ. 2577, 2016 WL 2909429, at *5 (N.D. Cal. May 19, 2016) (where the parties completed significant informal written discovery, three depositions, interviews of many witnesses, examination of wage statement data and employment policies and procedures, and attended mediation, this factor weighed in favor of final approval).

### F. Class Counsel Has Extensive Experience and Supports the Settlement (*Hanlon Factor* 6).

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528 (internal quotations and citations omitted). Therefore, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* (internal quotations and citations omitted). Class Counsel in this case are highly experienced, both in employment law and in class actions. Grunfeld Decl. ¶ 4; Liu Decl. ¶ 2; *see also* Grunfeld Decl. for Awards, Fees, and Costs, Dkt. No. 47-1 ¶¶ 4-15; Declaration of Jennifer Liu in Support of Motion for Class Representative Service Awards and Attorney's Fees and Costs, Dkt. No. 47-2 ¶¶ 2-10.

After weighing all of the factors discussed above, Class Counsel support the settlement as just and adequate to resolve the class's claims. Grunfeld Decl. ¶ 9; Liu Decl. ¶ 9. The three named class representatives, who were actively involved in every stage of the case, also support the settlement. Quinby Decl. ¶ 3; Gomes Decl. ¶¶ 3-4; Fontes Decl. ¶¶ 3-4. This factor therefore weighs in favor of final approval.

### G. The Presence of a Governmental Participant (*Hanlon Factor* 7).

Here, the proposed settlement did not involve the presence of a governmental participant. Therefore, this factor is neutral and does not weigh in favor of or against final approval.

### H. Class Members Overwhelmingly Support the Settlement (*Hanlon Factor* 8).

Finally, the reaction of Class Members provides strong support for final approval of

1  the settlement.  "[T]he absence of a large number of objections to a proposed class action
2  settlement raises a strong presumption that the terms of a proposed class settlement action
3  are favorable to the class members." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.
4  The Settlement Administrator mailed notice of the settlement to each class member with
5  an estimated monetary share. Kincannon Decl. ¶ 5. Of the 263 original notices mailed,
6  only fifty-nine (59) were returned by the post office, and after additional research and
7  mailing, only twenty-five (25) notices were ultimately undeliverable. *Id.*, ¶ 6.

8      Class Members were provided with forty-five days during which they could object
9  to the settlement or exclude themselves from it. *Id.*, Exhibit A (Notice of Class Action
10 Settlement), ¶¶ 14, 19. During that period, Simpluris received no opt-out requests or any
11 objections to any aspect of the settlement, including the overall monetary relief achieved
12 and the amounts set aside for attorney's fees, costs, and class representative service
13 awards. *Id.*, ¶¶ 7-8.

14     Overall, the lack of objections by Class Members and the one-hundred percent
15 participation rate show a positive reaction by the class to the settlement, favoring a finding
16 that the settlement is fair. *See Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013
17 WL 6531177, at *17 (C.D. Cal. Nov. 23, 2013) (collecting cases in which opt-out and
18 objection rates below one percent were found to strongly support an inference that class
19 members supported the settlement). More anecdotally, Class Representative Jaimie
20 Quinby has interacted with other former ULTA GMs through her current employment, all
21 of whom have expressed significant satisfaction with the settlement, and gratitude to her
22 for bringing the case. Quinby Decl. ¶ 4.

23     This factor weighs heavily in favor of final approval.

## CONCLUSION

25     The settlement provides an outstanding result for the class. Class Members will
26 receive significant monetary recovery for their claims. All of the relevant factors weigh in
27 favor of a finding that the settlement is fair, reasonable, and adequate. Most importantly,
28 of the 263 Class Members, there have been no timely opt outs or objections to the

Settlement. Plaintiffs respectfully request that the Court grant final approval to the settlement and enter the Proposed Order filed herewith.

DATED: January 3, 2017    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Gay Crosthwait Grunfeld*
     Gay Crosthwait Grunfeld

Attorneys for Plaintiffs and the Settlement Class

DATED: January 3, 2017    Respectfully submitted,

THE LIU LAW FIRM, P.C.

By:  */s/ Jennifer Liu*
     Jennifer Liu

Attorneys for Plaintiffs and the Settlement Class

### **FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(i), I, Gay Crosthwait Grunfeld, attest that concurrence in the filing of this document has been obtained.

DATED:  January 3, 2017    By:  */s/ Gay Crosthwait Grunfeld*
     Gay Crosthwait Grunfeld

[3073318-4]

16    CV-15-4099 WHO
NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF